**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DEBORAH ALICE NEAL, | ) | Case No. 05-43393 |
| | ) | |
| Debtor. | ) | |

## MEMORANDUM OPINION

Inquiring minds want to know.[1] But are they entitled to know?

That is the question now before the court. The Kansas City Star, Kansas City's largest newspaper ("Star"), insists that the public has a right to know the names of all attorneys who lent money to the Debtor, Deborah Alice Neal, when she was a Kansas City municipal judge. The Debtor and the attorney-creditors whose names have been filed under seal with the Court ("Unnamed Creditors") disagree. They contend that making their names public would scandalize them.

Section 107(b)(2) of the bankruptcy code requires a bankruptcy court to protect an individual with respect to "scandalous" or "defamatory" information contained in a paper filed with the court.[2] When the Debtor filed bankruptcy on May 19, 2005, she petitioned the Court under § 107 to "seal" that portion of the list of her creditors containing the names of the attorneys who had lent her money when she was a sitting judge, on grounds that that information was defamatory and scandalous. As a general rule, it is not unethical for a judge to borrow money from an attorney, but it is improper if the attorney appears, or is likely to appear, before that judge in a legal proceeding.[3] Because the list of Unnamed Creditors does not differentiate between those attorneys who did and did not appear in front of former judge Neal, the Debtor asserted that placing that list in the public record would "paint them [all] with the same brush," thereby

---

[1] For those who don't remember, this was the tag-line of the sensationalist newspaper, the National Enquirer.

[2] 11 U.S.C. § 107(b)(2).

[3] Mo. Sup. Ct. Rule 2.3, Canon 4.D.(3) provides in pertinent part: "Neither a judge nor a member of the judge's family . . . shall accept a . . . loan from anyone except as follows: . . . (c) a judge or member of the judge's family . . . may accept a . . . loan only if the donor is not a party or other persons whose interests have come or are likely to come before the judge . . . ."

jeopardizing the reputations of the attorneys who did not engage in unethical behavior. Therefore, the Debtor argued, the names of the Unnamed Creditors should be excluded from the public record under § 107.

On May 24, 2005, the Court held a hearing to consider the Debtor's request. The Debtor and the United States Trustee were the only parties present. The attorneys named as creditors were not notified of the filing of the motion or of the hearing, nor was the Star. At the conclusion of the hearing, the Court announced its intention to grant the Debtor's request, but the Court emphasized that its order was not final and that the Court might revisit the issue.[4]

On October 31, 2005, the Star presented the Court with an opportunity to do just that by filing a motion to vacate the Court's previous order. On November 8, 2005, the Court held a hearing on the Star's motion. At that hearing, the Court indicated its willingness to reconsider its prior order and offered the parties, including the Debtor, the Star, and any "Unnamed Creditor" who wanted to participate in the proceedings, an opportunity to submit briefs on the issue of whether the list of Unnamed Creditors constitutes "scandalous information contained in a pleading," such that the Court is required to protect the Unnamed Creditors from the potential harm arising from the publication of that information.[5] Attorneys for the Star, the Debtor, and three of the Unnamed Creditors filed very thorough and excellent briefs.

Thus, the sole issue presently before the Court is whether a list of the names of the attorneys who lent the Debtor money when she was a Kansas City municipal judge is, in and of itself, scandalous. After careful consideration of the pleadings and the law, and for the reasons set out below, the Court concludes that publishing the names of the attorney-creditors at this point would be scandalous. Accordingly, the Court will enter a final order sealing the list of Unnamed Creditors.

## BACKGROUND

At the risk of rehashing "old news," a brief discussion of the Debtor's trials and tribulations is

---

[4] An order reflecting the Court's findings was entered on May 27, 2005.

[5] The Court also permitted parties to brief the issue of standing, but that issue is moot in light of the Court's decision to amend its May 27, 2005 order to include a *sua sponte* determination that the list of Unnamed Creditors should be sealed pursuant to Rule 9018, as well as 11 U.S.C. § 107(b)(2).

2

necessary to provide context for the Court's ruling.

Deborah Alice Neal ("Debtor" or "Ms. Neal") was appointed to the Kansas City, Missouri, Municipal Court in May 1996. Before her troubles began, Ms. Neal was considered by some to be a role model. She served as president of the Jackson County Bar Association and was a board member of the Kansas City chapter of the NAACP. She was the first African-American woman appointed to the Kansas City Municipal Court.

Two events thrust Ms. Neal's financial problems into the public eye. First, she filed a Chapter 13 bankruptcy on June 22, 2000. That bankruptcy did not achieve the notoriety of this case because Ms. Neal did not disclose any loans from attorneys -- in her bankruptcy pleadings or otherwise. Then, Ms. Neal was caught up in an early morning raid of a Kansas City, Kansas casino in April 2004. Not long thereafter, Ms. Neal admitted to the Missouri Commission on Retirement, Removal, and Discipline of Judges,[6] in a letter dated August 16, 2004, that she had a gambling addiction, had received loans from local attorneys, and was suffering from depression.

In late September or early October 2004, a federal grand jury convened to investigate Ms. Neal. This investigation ultimately led to criminal charges and a plea agreement wherein Ms. Neal pled guilty to mail fraud for not disclosing the attorneys' loans in mandatory financial disclosures she sent to the state of Missouri. In the plea agreement, Ms. Neal acknowledged that she had used her official position to obtain loans from attorneys who appeared before her, but she denied that she had given favorable rulings in exchange for the loans. Ms. Neal also agreed to provide to the United States Attorney and to the Missouri Office of Chief Disciplinary Counsel ("OCDC"), the arm of the Missouri Supreme Court that investigates disciplinary matters involving attorneys licensed to practice in Missouri, the names of the attorneys who lent her money and the amounts of the loans.

## ANALYSIS

Perhaps contrary to public belief, the public – and the Star, acting on the public's behalf – does not have an *absolute* right of access to court files and hearings. Indeed, to its credit, the Star concedes in its

---

[6] The Missouri Commission on Retirement, Removal and Discipline of Judges is responsible for receiving and investigating requests for the retirement of judges and complaints concerning alleged misconduct of judges and judicial commission members.

pleadings that the public's access to court records, whether couched in terms of the First Amendment to the United States Constitution or the common law, is not absolute. In this case, the First Amendment and the common law do not come into play because Congress has provided by statute that, in certain instances, access to court files in bankruptcy cases may be restricted.

**11 U.S.C. § 107(b)**

"The authority to protect persons from scandalous or defamatory material has been entrusted to the courts for well over a century."[7] In some contexts, courts balance the interests of privacy and the public's "right to know" when reviewing a request for judicial non-disclosure.[8] Here, however, the mandatory language of § 107(b) obviates the need for such a balancing test. Section 107(b) states that a court "shall" protect an entity from "scandalous or defamatory matter contained in a pleading."[9] Thus, a court *must* act if it determines that the material at issue is scandalous or defamatory. A court is properly accorded broad discretion in making that determination and in fashioning the appropriate protective remedy.[10]

Unfortunately, the case law on § 107(b)(2) is sparse, and much of it deals with the other prong of § 107(b)(2) – whether something is "defamatory" under the statute.[11] But, as the Court stated at the May 24, 2005 hearing, defamation is not an issue here because "defamatory" means "untrue," and there has been no suggestion that the list of Unnamed Creditors is inaccurate or untrue. The silver lining in this cloud under which the definition of "scandalous" appears to be shrouded is that the few cases directly addressing "scandalous" for purposes of § 107, and its counterpart in the Federal Rules of Bankruptcy Procedure, Rule 9018, have all adopted essentially the same standard: Statements are scandalous if a reasonable

---

[7] *Phar-Mor, Inc. v Defendants Named Under Seal* (*In re Phar-Mor*), 191 B.R. 675, 678 (Bankr. N.D. Ohio 1995).

[8] *See, e.g., In re Boston Herald, Inc.,* 321 F.3d 174, 190 (1st Cir. 2003); *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 476 (6th Cir. 1983).

[9] 11 U.S.C. § 107(b)(2).

[10] *See In re Phar-Mor*, 191 B.R. at 679; 2 *Collier On Bankruptcy* ¶ 107.03[2].

[11] *See, e.g., In re Gitto Global Corp.*, 422 F.3d 1, 8-17 (1st Cir. 2005); *In re Continental Airlines*, 150 B.R. 334, 340 (D. Del. 1993).

person could alter his or her opinion of the subject based on the statements in the papers filed, taking those statements in the context in which they appear.[12] Several cases also point out that the statements must also be more than just embarrassing or prejudicial.[13]

As stated, any "change" in opinion might be sufficient to trigger a finding of scandalous under this standard. The Court takes guidance from Black's Law Dictionary and cases and commentary on Federal Rule of Civil Procedure 12(f) – the rule for striking scandalous material from a pleading – to add some necessary refinement. Those sources both indicate that material is scandalous if it reflects negatively on the subject's moral character.[14] Therefore, for purposes of § 107(b)(2), the Court defines scandalous material as statements in a pleading that could cause a reasonable person to negatively alter his or her opinion of the subject's moral character, taking those statements in the context in which they appear.

At first glance, under this standard the list of Unnamed Creditors is not scandalous. It is, as the Star argues, simply a list of creditors. The context – the Debtor's bankruptcy schedules – is innocuous, and the information – that the Debtor owes these people money – would seem to have nothing to do with their moral character.[15] If the Court stopped here, however, it would ignore a crucial part of the context in which this information appears, namely, a context that is intrinsically colored by the ethical obligations of judges and attorneys and the idiosyncratic nature of their

---

[12] *See In re FiberMark, Inc.*, 330 B.R. 480, 507 (Bankr. D. Vt. 2005); *In re Phar-Mor,* 191 B.R. at 679; *Matter of Commodore Corp.*, 70 B.R. 543, 546 (Bankr. N.D. Ind. 1987); *In re Sherman-Noyes & Prairie Apartments Real Estate Investment Partnership*, 59 B.R. 905, 909 (Bankr. N.D. Ill. 1986). *See also*, *In re Gitto Global Corp.*, 321 B.R. 367, 374 (Bankr. D. Mass. 2005) (ultimately deciding that material was "defamatory," but emphasizing context-sensitive nature of analysis under § 107(b)(2)).

[13] *In re FiberMark, Inc.*, 330 B.R. at 507; *In re Foundation for New Era Philanthropy*, 1995 WL 478841, *7 (Bankr. E.D. Pa. 1995). *See also, In re Gitto Global Corp.*, 2005 WL 1027348, *11-12 (D. Mass. 2005) (discussing common law requirement that material be more than simply embarrassing to restrict public access).

[14] Black's Law Dictionary defines "scandalous" as material that "improperly casts a derogatory light on someone, usually a party to the action, with respect to moral character." Black's Law Dictionary 1344 (6th ed. 1996). Rule 12(f) jurisprudence interprets "scandalous" as that which reflects negatively or "cruelly" on a person's moral character. *See* 2 *Moore's Federal Practice 3d* § 12.37[4] (Matthew Bender 3d ed.); Wright & Miller, *Federal Practice and Procedure* § 1382 (West 2004).

[15] However, the Court cannot help but ask, if the list was truly this mundane, why is the Star so interested in its public disclosure?

6

relationship. In other words, a linkage of the very identity of the Debtor and the Unnamed Creditors in this context may well render the disclosure of their debtor-creditor relationship scandalous.

As mentioned above, it is not necessarily unethical or criminal for an attorney to lend a judge money (as long as the judge discloses the loan to the appropriate authorities). If an attorney does not appear or is not likely to appear before the judge, no ethical red flags are raised. Based on the Debtor's representations, many of the Unnamed Creditors lent the Debtor money under precisely these circumstances. However, this is not the case for all of the Unnamed Creditors. By the Debtor's own admission, some of the Unnamed Creditors did or were likely to appear in front of her while she was a sitting judge. At the least, such a transaction might be unethical to the extent that it gives the appearance of impropriety; at worst, it may constitute bribery. The problem here is that the list of Unnamed Creditors does not distinguish between the Unnamed Creditors who engaged in unethical behavior and those who didn't.

Therefore, until the OCDC determines which of the Unnamed Creditors acted unethically, there is no way to distinguish between the ethical and unethical Unnamed Creditors, and until there is a way to make such a distinction, there is no way to publicize the undifferentiated list of Unnamed Creditors without a real risk that reasonable people will draw unfavorable conclusions about the ethical or moral character of ***all*** of the Unnamed Creditors. Accordingly, the Court finds that the list of Unnamed Creditors is scandalous for purposes of 11 U.S.C. § 107(b)(2).

This conclusion is reinforced by several factors. First, the public interest (as distinguished from the public appetite for salacious news) will not be harmed by sealing the list of Unnamed Creditors at this juncture because the names of the Unnamed Creditors have already been disseminated to all of the parties who require that information for the bankruptcy process to function properly – *i.e.*, the United States Trustee and the chapter 7 trustee. It is not necessary that the other creditors know the identity of the Unnamed Creditors because consultation among creditors is unnecessary in a chapter 7 bankruptcy case, unlike a chapter 11 bankruptcy where such contact may assist the creditors in evaluating or participating in a debtor's reorganization.[16]

---

[16] *Cf.,In re Moreamerica Financial Corp.*, 158 B.R. 135, 137 (Bankr. N.D. Iowa 1993).

Moreover, the names of the Unnamed Creditors have also been disclosed to the OCDC and the U.S. Attorney. Therefore, any potential ethical or criminal violations will be duly investigated, and, if reports in the Star are accurate, are already being investigated. Although the details of those investigations are confidential, any disciplinary action taken as a result of the investigations will be made public. So, in the end, the public interest in knowing which attorneys in the community engaged in unethical behavior will be served – without casting the unwarranted shadow of guilt on the attorneys who have been cleared of any wrongdoing by the regulating body entrusted with the responsibility to make such determinations.

Second, the magnitude of the harm that might befall the "innocent" Unnamed Creditors if their names are made public weighs in favor of restricting public access to this information. It has often been said that "an attorney's professional reputation undoubtedly is his or her most valuable asset."[17] The publication of the names of the Unnamed Creditors would almost certainly tarnish that "asset." For the Unnamed Creditors who are ultimately determined to have acted unethically, the Court has little sympathy. However, the Court can, and will, protect the "innocent" attorneys from suffering unwarranted harm to their reputations.

Finally, the Court notes that to some degree the Star had a hand in its own "undoing" here. The Court does not fault the Star for its reporting on Ms. Neal's travails and legal woes. To the contrary, the misconduct of a judge is a grave matter deserving of public attention, and the Star should be lauded for its in-depth coverage. However, that coverage frequently cast Ms. Neal in a negative light,[18] which, even if warranted, has "poisoned the water" of public opinion such that the public would likely assume the worst if the Unnamed Creditors were named in the newspaper -- which is where the names would undoubtedly appear if the list is made public. This factor, along

---

[17] *See, e.g., U.S. vs. Gonzalez*, 344 F.3d 1036, 1046 (10th Cir. 2003) (citing *Cooter and Gell v. Hartmarx Corp.*, 496 U.S. 384, 413 (1990) (Stevens, J., concurring in part, dissenting in part)).

[18] For example, Staff Writer Barbara Shelly's Opinion from May 5, 2005, begins, "Details disclosed at former Municipal Court Judge Deborah Neal's plea hearing reveal an ethical rot that festered for years and involved not just her but some lawyers as well." Similarly, on October 5, 2005, the Star printed an Opinion letter stating, "Now the federal government must continue its investigation into which lawyers and bonding companies gave 'loans' to Neal. She has said no one benefitted from giving her money. There's no reason, however, for the public to assume that's true."

9

with the others noted above, reinforces the Court's conclusion that the list of Unnamed Creditors is "scandalous" material and that the Court is obligated to provide them protection under § 107(b).

**Federal Rule of Bankruptcy Procedure 9018.**

Rule 9018 provides an alternate basis for the Court's ruling. Under Rule 9018, the Court has the authority to issue an order, *sua sponte*, "to protect governmental matters that are made confidential by statute or regulation."

Rule 9018 provides in pertinent part:

On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information, (2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code, or (3) *to protect governmental matters that are made confidential by statute or regulation* . . . [19] (emphasis added)

Investigations conducted by the OCDC are clearly governmental matters. The Supreme Court of Missouri is the head of the judicial branch of Missouri government, and the Missouri Supreme Court created the OCDC to investigate matters of alleged misconduct by members of the Missouri Bar.[20]

Missouri Supreme Court Rules 5.31(b) and 5.315(a) require that those matters be kept confidential. Rule 5.31 requires the confidentiality of the names of attorneys under investigation by the OCDC until it has determined that discipline is warranted,[21] and Rule 5.315 further safeguards that confidentiality by making all internal communications regarding an investigation privileged information

---

[19] Fed. R. Bank. P. 9018. (emphasis added).

[20] *See* Mo. Sup. Ct. R. 5.06 (directing the Supreme Court to appoint Chief Disciplinary Counsel); Rule 5.07 (authorizing the Chief Disciplinary Counsel to staff an office); and Rule 5.08 (outlining the scope of the Chief Disciplinary Counsel's duties and authority).

[21] **5.31. Records of Investigations and Formal Proceedings**
(a)   The records of all proceedings occurring prior to the acceptance of a written letter of admonition or the filing in this Court of a decision of a disciplinary hearing panel finding a violation of Rule 4 or of an information directly in this Court shall not be made public unless ordered by this Court or the lawyer shall so request. The records of all proceedings occurring before the disciplinary hearing panel decision or information is filed directly in this Court shall be deposited with the chief disciplinary counsel. Except as otherwise provided in this Rule 5.31 or otherwise ordered by this Court, such records may be inspected only by the chief disciplinary counsel, members of the committee holding a hearing, or the person complained against or that person's duly authorized representative.

(inadmissible as evidence).[22]

Lest it be thought that the Court is seeking to protect its former colleagues in the legal profession, the Court notes that lawyers are not the only professionals protected by such rules of confidentiality. For example, investigations of alleged violations under the purview of the Missouri Ethics Commission are mandatorily confidential, Mo. Rev. Stat. § 105.959; information, documents, and proceedings involving impaired dentists are confidential, Mo. Rev. Stat. § 332.327; and complaint and investigation files relating to alleged misconduct of accountants are likewise protected from public scrutiny, Mo. Rev. Stat. § 326.295. In short, disciplinary proceedings for many professions are confidential for a reason – to protect the reputations of innocent people.[23]

Therefore, under Fed. R. Bank. P. 9018, the Court has the authority to issue an order sealing the list of Unnamed Creditors to protect the confidentiality of the ongoing OCDC investigations of the Unnamed Creditors.[24]

## CONCLUSION

The issue presented to the Court in this case is not an easy one. On one hand, the Court is an ardent advocate of open records and of public disclosure. On the other hand, the Court is sensitive to the fact that public disclosure of the names of the attorney-creditors in this case will result in their reputations being tarnished and their character impugned, perhaps unfairly and permanently. The attorneys' loans to

---

[22] **5.315 Immunity and Privileges**
(a) Communications submitted to the advisory committee, chief disciplinary counsel, regional disciplinary committees, disciplinary hearing panels, or the staffs of any of these entities relating to lawyer misconduct or disability are absolutely privileged if submitted in good faith. No lawsuit predicated on such communications may be instituted.

[23] Moreover, the public will eventually learn who among the attorneys committed ethical violations, inasmuch as disciplinary actions taken by the Supreme Court are reported monthly in *The Missouri Bar Journal,* and a comprehensive listing of all disciplinary actions taken for the year is published annually in the *Journal.* The September-October 2005 issue, for example, published the names of 48 lawyers who were disciplined in the past year.

[24] The Court notes that it does not interpret Rule 9018 as giving the Court a roving mission to protect the confidentiality of OCDC investigations. However, Rule 9018's specific authorization of *sua sponte* orders does suggest that the Court has a duty to protect the confidentiality of governmental matters once information potentially violating that confidentiality is brought to the attention of the Court. And that is exactly what has happened here.

Ms. Neal have already called into question the integrity of the courts in Kansas City. Releasing the names of those attorneys – many of whom have done absolutely nothing wrong – will do nothing to restore that integrity.

Therefore, for the reasons stated above, the Court will deny the Kansas City Star's motion to vacate the Court's May 27, 2005 order granting the Debtor leave to file the list of Unnamed Creditors under seal, and will amend the May 27, 2005, order to include a finding that the order sealing the list of Unnamed Creditors is warranted under Fed. R. Bank. P. 9018. The order will also be made final.

A separate order consistent with this Memorandum Opinion will be entered pursuant to Fed. R. Bankr. P. 9021.

**ENTERED** this 20th day of December, 2005.

/s/    Jerry W. Venters
United States Bankruptcy Judge

Copy of the foregoing mailed electronically or
conventionally to:
Nell Adams
Brian T. Fenimore
John S. Johnston
Erlene W. Krigel
Kevin E. J. Regan
Fred L. Slough
Sherri L. Wattenbarger